**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward L. DINGLE, Defendant-Appellant.**

**No. 75–1943.**

United States Court of Appeals,
Tenth Circuit.

Submitted Oct. 15, 1976.

Decided Dec. 27, 1976.

Stephen M. Munsinger, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Stephen E. Tinkler, Denver, Colo. (Joseph R. Marranzino, Denver, Colo., on the brief), for defendant-appellant.

Before BARRETT, BREITENSTEIN and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Edward L. Dingle (Dingle) was convicted of violating 18 U.S.C. § 922(i), interstate transportation of stolen firearms; 18 U.S.C. § 922(j), concealing and storing firearms; and 18 U.S.C. § 2312, interstate transportation of a stolen motor vehicle. Dingle appeals from the guilty verdict and the District Court's denial of his motion for a new trial.

It was stipulated that a theft of firearms occurred in Iowa; that the stolen firearms

were transported to Colorado; and that a stolen motor vehicle was transported from Iowa to Colorado.

The government called as witnesses two co-participants in the crimes, both of whom were then serving sentences for concealing and storing stolen firearms (count two of the indictment against Dingle). These witnesses, Herbert R. Bianco (Bianco) and Craig R. Bean (Bean), refused to answer four questions which would have implicated them in the other crimes Dingle was convicted of, on the grounds of self-incrimination. The jury was excused, the witnesses were granted immunity pursuant to 18 U.S.C. § 6002 and § 6003, and both then testified, fully implicating Dingle in the crimes charged. For impeachment purposes, Dingle's counsel requested the production of a presentence report made by the Probation Department on Bianco, which was denied without an in camera hearing. The defense introduced Bianco's request for a sentence reduction and rested. Dingle was found guilty on all three counts.

This court ordered a partial remand to the trial court for the limited purpose of conducting an evidentiary hearing on the issue of ineffective counsel. The trial court found that Dingle received full and effective assistance from competent counsel.

Dingle's main contentions on appeal are: (1) that the trial court erred by not demanding the production of Bianco's presentence investigation report by the Probation Department; (2) that the prosecution was guilty of misconduct and that the jury was misled by the introduction of two witnesses with the government's knowledge that they would refuse to testify on the grounds of self-incrimination; (3) that the trial court erred in not granting a judgment of acquittal; and (4) that Dingle's trial counsel was incompetent.

## I.

■ Dingle contends that the trial court erred in not demanding production under the Jencks Act, 18 U.S.C. § 3500, of Bianco's presentence report and that the trial court should have held an in camera hearing to determine if the presentence report was producible.

Bianco, one of the government's principal witnesses, pled guilty to concealing and storing stolen firearms, the subject of one of the crimes Dingle stands convicted of. Before sentencing Bianco, the court ordered that a presentence report be prepared. After considering the report the court sentenced Bianco. He is presently serving his sentence.

18 U.S.C. § 3500(b) provides:

After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness testified . .

The court found that a presentence report is not a "statement" as defined by the Act. Thereupon, the burden was on Dingle to show that this particular report qualifies as a "statement" and is producible. *United States v. Pennett*, 496 F.2d 293 (10th Cir. 1974); *United States v. Smaldone*, 484 F.2d 311 (10th Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1411, 39 L.Ed.2d 469 (1974). We will not disturb the trial court's finding and/or conclusion unless it is clearly erroneous. *Campbell v. United States*, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); *United States v. Pennett, supra.*

We concur in the trial court's finding that a presentence report is not a producible "statement" under the Jencks Act. The need for maintaining the confidentiality of a probation report outweighs any possible need for its discovery under the Jencks Act.

Fed.Rules Crim.Proc., Rule 32(c)(1), 18 U.S.C. provides:

The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, . . .

It is evident, from the clear language of this rule, that the probation service is an

arm of the court. It is not an investigative arm for the prosecution. A presentence report is prepared exclusively at the discretion of and for the benefit of the court. It is essential that the confidentiality of such a report be protected to insure the free flow of information. In *United States v. Green*, 483 F.2d 469 (10th Cir. 1973), *cert. denied*, 414 U.S. 1071, 94 S.Ct. 583, 38 L.Ed.2d 477 (1973), we said, *inter alia*:

> . . . The courts have recognized that presentence reports often contain information which is entitled to be protected in the interest of continuing the flow of facts concerning the accused. See *United States v. Schipani*, 435 F.2d 26 (2d Cir. 1970); *Baker v. United States*, 388 F.2d 931, 933 (4th Cir. 1968); Annot., "Defendant's Right to Disclosure of Presentence Report," 40 A.L.R.3d 681 (1971). The judge has an interest in encouraging a broad scope of knowledge so as to insure intelligent and effective sentencing.

483 F.2d, at 470.

We have held that a presentence report does not fall within the Freedom of Information Act, 5 U.S.C.A. § 552, because it is not agency information. *Cook v. Willingham*, 400 F.2d 885 (10th Cir. 1968). It follows that a presentence report should not be made available under the Jencks Act. We find the reasoning in *United States v. Greathouse*, 188 F.Supp. 765 (N.D.Ala.1960), persuasive. In that case a subpoena duces tecum was quashed which would have produced a presentence report of a co-defendant who had pled guilty. The court said:

> . . . To permit the probation officer to be subpoenaed and to produce a presentence report for use by a defendant would, in the opinion of this Court, seriously hamper and handicap the probation investigation system in this district. When the probation officer makes the investigation that forms the basis for a pre-sentence report, he is acting as an arm of the court and as an investigator for the Judge of the Court. The pre-sentence report is not a public record, it is a confidential report for the use of the Judge of the Court in his effort to determine what a fair sentence should be.

188 F.Supp., at 766.

■ Dingle's contention that the trial court should have held an in camera hearing to determine if the presentence report was producible is without merit. A trial court is not required to hold an in camera hearing unless the requested document possibly satisfies the requirements of the Jencks Act. *Campbell v. United States*, 365 U.S. 85, 87, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961); *Dennis v. United States*, 302 F.2d 5 (10th Cir. 1962); *Canaday v. United States*, 354 F.2d 849 (8th Cir. 1966). Further, the procedure for determining whether or not a "statement" is involved rests within the sound discretion of the trial judge. *Dennis v. United States, supra.*

Dingle did not fulfill his burden of showing that the presentence report is a producible statement and that an in camera hearing was necessary.

■ Dingle further claims that the presentence report is producible under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady, supra*, requires the disclosure by the prosecution of any evidence favorable to the accused. This rule does not apply to a presentence report because the report is not available to the prosecution. It is not submitted to or in the possession of the government. Rule 32(c)(2) of the Fed.Rules Crim.Proc. authorizes the trial court to permit a defendant or his counsel to examine a presentence report. *Johnson v. United States*, 485 F.2d 240 (10th Cir. 1973); *United States v. Green, supra*. This rule does not allow disclosure of the presentence report to the prosecution in a separate trial. The prosecution in Dingle's case did not have access to Bianco's presentence report, therefore, disclosure is not required under *Brady, supra*.

## II.

■ Dingle contends that the prosecutor acted improperly and prejudiced his right to due process of law by calling Witnesses Bean and Bianco when the prosecution

knew or should have known that they would refuse to testify on the grounds of their privileges against self-incrimination. The witnesses were co-participants in the crimes with Dingle. Both Bean and Bianco pled guilty to storing and concealing stolen firearms, which is but one of the three charges against Dingle, all of which arose out of the same transaction.

Before trial, the defense attorney, the prosecution, and the trial judge discussed the method of granting immunity to these witnesses. It was unanimously agreed that the witnesses should first invoke their privilege on the witness stand. [R., Vol. I, p. 5.] The court thereafter informed the jury of the method agreed upon. When the jury was first instructed, the court stated that a witness may first refuse to testify on the grounds of self-incrimination, and that next the witness would receive a grant of immunity from prosecution and only then would the witness testify. [R., Vol. I, p. 28.] The prosecution asked both witnesses four questions dealing with their participation in the theft of a motor vehicle and their participation in the stealing, transporting and subsequent selling of firearms. Both witnesses refused to answer on the grounds that it would incriminate them in federal crimes for which they had not been convicted of nor had immunity from. The jury was dismissed. Proceedings were then undertaken pursuant to 18 U.S.C. § 6002 and § 6003. The court determined that both

witnesses were entitled to invoke their privilege against self-incrimination and upon motion by the prosecution the court granted immunity from prosecution should the witnesses respond to questions which would implicate them in charges other than that which they had been convicted of. The jury was then recalled. Thereupon, the witnesses gave testimony directly implicating themselves and Dingle in the three charges brought solely against Dingle.

Dingle contends that the procedure employed, i. e., calling the witnesses to the stand and permitting them to invoke their privilege against self-incrimination before immunity was granted, constitutes prosecutorial misconduct in light of *United States v. Coppola,* 479 F.2d 1153 (10th Cir. 1973). We hold that the procedure employed is permissible under 18 U.S.C. §§ 6002–6003. No abuse or misconduct resulted by asking Bean and Bianco the four specific questions involved in this case.

We deem it significant that in none of the cases relied upon by Dingle was there any attempt on the part of the government to obtain a grant of immunity under 18 U.S.C. §§ 6002–6003 which would have relieved the witnesses of fear of crimination.

The facts here are readily distinguishable from those in *United States v. Coppola, supra.* The prosecution in *Coppola, supra,* asked eighteen privileged questions whereas here only four such questions were posed to each witness.[1] The questions asked of

---

1. The privileged questions asked of Bean were as follows:

Q. Mr. Bean, on or about the 28th day of September, 1974, did you have the occasion to participate in a theft of a Datsun 240Z?

Q. Mr. Bean, on or about the 28th day of September of 1974, did you have an occasion to participate in the burglary of Cook's Hardware Store in Mechanicsville, Iowa?

Q. Mr. Bean, on or about the 29th day of September of 1974, did you have an occasion to participate in the transportation of stolen guns from Mechanicsville, Iowa, to the State and District of Colorado?

Q. Mr. Bean, on or about the 30th day of September of 1974, did you have an occasion to attempt to sell guns stolen from Mechanicsville, Iowa, and transported to Denver via a Datsun 240Z to Alcohol, Tobacco, and Firearms agents?

The privileged questions asked of Bianco were as follows:

Q. Mr. Bianco, on or about the 28th day of September of 1974, did you have an occasion to participate in the theft of a Datsun 240Z in the State of Iowa?

Q. Mr. Bianco, on or about the 28th day of September of 1974, did you have an occasion to participate in a burglary of Cook's Hardware Store in the State of Iowa?

Q. Mr. Bianco, on or about the 28th day of September, 1974, did you have an occasion to participate in a transportation of stolen guns from the State of Iowa to the State of Colorado?

Q. Mr. Bianco, on or about the 30th day of September of 1974, did you have an occasion to participate in a sale of those stolen guns to Alcohol, Tobacco, and Firearms agents here in the State of Colorado?

the witness in *Coppola, supra,* created an atmosphere of guilt because they were so numerous and because they covered such a variety of topics. Here, the questions posed were central to the issues requisite for the assertion of the privilege against self-incrimination and specifically targeted for the grant of immunity. They were limited and specific in relation to the charges lodged against Dingle. This case is further distinguishable from *Coppola* in that here the judge explained the immunity-grant procedure to the jury, whereas in *Coppola* no admonition was given. The chance for any prejudicial inference was minimal in this case. In *Coppola, supra,* at 1160, we held that a prosecutor may call a witness and pose questions with prior knowledge that the witness intends to refuse to answer them under claim of the privilege afforded by the Fifth Amendment. It was not error to call Bean or Bishop.

The facts here are very similar to those in *Manet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), where the Supreme Court held that the questions did not give rise to prejudicial error. The prosecution, in both cases, asked only four privileged questions of each witness and the claims of testimonial privilege were deemed cumulative support for the inferences established by the witnesses' testimony.

Bean and Bianco were granted immunity under 18 U.S.C. §§ 6002–6003.[2]

It is proper under these statutes to have the witness invoke his privilege on the witness stand before receiving a grant of immunity. Under 18 U.S.C. § 6002 ("refuses . . . to testify") a witness must refuse to testify in order to lay the predicate for a grant of immunity compelling such testimony. 18 U.S.C. § 6003 provides that an order of immunity may issue before the witness takes the stand. However, this procedure is not exclusive. The examination of the witness before the jury has potential for abuse if various and sundry privileged questions are asked before immunity is granted. The atmosphere of guilt may very likely arise as in *Coppola, supra.* There was no such abuse in the case at bar.

There are numerous decisions upholding the procedure employed here. (Cases involving grand jury proceedings are included because the immunity-grant statutes apply equally to grand jury and trial proceedings). *United States v. Smith,* 532 F.2d 158 (10th Cir. 1976); *United States v. Leyva,* 513 F.2d 774 (5th Cir. 1975); *In Re Bonk,* 527 F.2d 120 (7th Cir. 1975); *United States v. Rauhoff,* 525 F.2d 1170 (7th Cir. 1975); *United States v. Anderson,* 165 U.S.App. D.C. 390, 509 F.2d 312 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975); *United States v. Burket,* 480 F.2d 568 (2d Cir. 1973); *United States v. Kelly,* 464 F.2d 709 (5th Cir. 1972). Some decisions allow the order granting immunity to be issued before the witness takes the stand. However, this procedure is not mandatory. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), *rehearing denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972); *United States v. Braasch,* 505 F.2d 139 (7th Cir. 1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1562, 43 L.Ed.2d 775 (1975); *In Re Di Bella,* 499 F.2d

---

2. 18 U.S.C. § 6002 provides:

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States . . . and the person presiding over the proceeding communicates to the witness an order under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; . . .

18 U.S.C. § 6003 provides:

(a) In the case of any individual who has been or may be called to testify . . . at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court . . . shall issue, in accordance with subsection (b) . . ., an order requiring such individual to give testimony . . .

(b) A United States Attorney may . . . request an order under subsection (a) of this section when in his judgment— . . .

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

1175 (2d Cir. 1974), *cert. denied,* 419 U.S. 1032, 95 S.Ct. 513, 42 L.Ed.2d 306 (1974).

■ The procedure employed by the Government did not constitute reversible error. The procedure did not preclude cross-examination on the grant of immunity and here the trial court carefully instructed the jury with respect to the procedure and the reasons therefor. We deem it advisable to point out, however, that the preferable manner of dealing with this problem would be simply to dismiss the jury before the witness is called and thereafter in open court—and on the record—to proceed to exam the witness leading to his claim of the privilege and the court's ruling thereon together with the subsequent motion by the Government for the protective order of immunity. When the foundation proceedings are concluded, the jury should be recalled and instructed by the court of the crux of the proceedings had and that the witness has been granted immunity from prosecution. Such procedure would avoid any problem of creating the atmosphere of guilt condemned in *Coppola, supra.*

### III.

■ Dingle contends that his motion for judgment of acquittal should have been granted because the government failed to prove some essential elements of the crimes.

The court instructed the jury that Dingle could be convicted of the crimes charged if he "aids, abets, counsels, recommends, induces or procures its commission, . . ." [R., Vol. I, pp. 116, 167.] *See* 18 U.S.C.A. § 2.

We have reviewed the evidence in the light most favorable to the government. *United States v. Smith,* 496 F.2d 185 (10th Cir. 1974), *cert. denied,* 419 U.S. 964, 95 S.Ct. 225, 42 L.Ed.2d 179 (1974), *rehearing denied,* 419 U.S. 1060, 95 S.Ct. 646, 42 L.Ed.2d 658 (1974); *United States v. Addington,* 471 F.2d 560 (10th Cir. 1973). There is substantial evidence establishing Dingle's guilt.

The evidence shows that Dingle induced both Bianco and Bean to participate in the gun theft and transportation by "casing" the gun store and devising the plan to steal the guns. Dingle loaded the guns in the cars and supplied the money for travel expenses from Iowa to Colorado. This evidence amply supports Dingle's conviction of transportation of stolen firearms. 18 U.S.C. § 922(i).

The stolen guns were placed in Dingle's car and the stolen car. They were then transported to Colorado. Dingle drove one of the cars. Dingle's guilt of concealing and storing stolen firearms was thus substantially established. 18 U.S.C. § 922(i).

Dingle made a key so that the automobile could be stolen. In addition, he changed the license plates on the car and, as heretofore noted, he also provided money for the gasoline required to transport the car. Dingle's guilt of transporting a stolen motor vehicle across state lines, 18 U.S.C. § 2312, was thus established in that he aided and abetted in the act.

### IV.

Dingle contends that he was denied his right to counsel as guaranteed by the Sixth Amendment because his trial counsel was incompetent. A specific hearing was held by the trial court on this issue following remand.

At the competency hearing, Dingle and his wife testified that Dingle repeatedly requested his trial counsel that he be permitted to take the stand. His trial counsel testified that his trial strategy was to attack the credibility of the government witnesses, [R., Vol. I, Supp., p. 17], and that he did not recommend that Dingle testify nor did he contact a witness, Mrs. Bean, because, in his judgment, she was not helpful to the defense strategy. The trial court found that counsel was competent. This finding must be given added weight in light of the fact that the court had an opportunity to view, hear, and observe the witnesses. *United States v. 79.95 Acres of Land, More or Less, In Rogers County, State of Oklahoma,* 459 F.2d 185 (10th Cir. 1972).

Dingle would have us adopt a new standard for determining the competency of counsel. He urges that the test for competent counsel should be whether the representation "... [is] reasonably likely to render and rendering reasonably effective assistance." *People v. Gonzales,* 543 P.2d 72, 74 (Colo.App.1974).

This court has long held that representation is competent unless it "was perfunctory, in bad faith, a sham, a pretense or without adequate opportunity for conference or preparation." *Johnson v. United States, supra; Tolhurst v. United States,* 453 F.2d 432 (10th Cir. 1971); *United States v. Baca,* 451 F.2d 1112 (10th Cir. 1971), *cert. denied,* 405 U.S. 1072, 92 S.Ct. 1524, 31 L.Ed.2d 806 (1972); *Ellis v. State of Oklahoma,* 430 F.2d 1352 (10th Cir. 1970), *cert. denied,* 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971). The rule is alive and well in this circuit.

Dingle's contention that his counsel was incompetent because he refused to permit him to testify is without merit. The trial court found that counsel simply recommended that Dingle refrain from testifying. Dingle cites three cases in support of his contention that it was error for his counsel to deny him the chance to testify. *United States v. Looper,* 419 F.2d 1405 (4th Cir. 1969); *Poe v. United States,* 233 F.Supp. 173 (D.D.C.1964); *People v. Moya,* 180 Colo. 228, 504 P.2d 352 (1972). The facts of each of these cases are readily distinguishable from the facts here. In *Looper, supra,* the trial court refused to permit the defendant to testify because he would not take an oath where he "swore to God." In the case at bar, the trial court did not prohibit Dingle's testimony. In *Poe, supra,* and *Moya, supra,* the reviewing court held that the only possible defense was that of the defendant's testimony on his own behalf and that by denying him that right, counsel failed to present *any defense.* Here counsel testified that his strategy was to attack the credibility of the two government witnesses who were ex-convicts, then serving sentences in the penitentiary for the same transactional crime Dingle was charged

with. Dingle's attorney put particular stress on the fact that at no time prior to or at the time of their sentencing did Bean or Bianco implicate Dingle. [R., Vol. I, Supp., p. 17.] Certainly, under these circumstances, Dingle's testimony was not the only defense. This is particularly true in light of the fact that Dingle would almost certainly have been impeached by reason of his prior Dyer Act felony conviction. Where there is another defense available, it is not error for trial counsel to recommend that the defendant refrain from testifying, especially if he would be subject to cross-examination on previous criminal activity. *United States v. Ladley,* 517 F.2d 1190 (9th Cir. 1975); *United States v. Pearson,* 483 F.2d 809 (9th Cir. 1973); *Hayes v. Russell,* 405 F.2d 859 (6th Cir. 1969).

Dingle further contends that his attorney was incompetent in that he did not contact Mrs. Bean, who, he alleges, would have testified that Dingle was coerced. Counsel testified that he did not contact Mrs. Bean because, in his judgment, her testimony would have been detrimental to Dingle's defense. Counsel believed that Mrs. Bean would have testified that Dingle did not burglarize the gun shop but that he did commit all of the other crimes as charged. It is a matter of discretion on the part of trial counsel to exercise judgment in the determination of witnesses to be called and the testimony to be elicited. *Sherrill v. Wyrick,* 524 F.2d 186 (8th Cir. 1975), *cert. denied,* 424 U.S. 923, 96 S.Ct. 1134, 47 L.Ed.2d 332 (1976); *United States v. Ladley, supra.* It is error not to call a witness when that witness would present the *only* defense available. *Gomez v. Beto,* 462 F.2d 596 (5th Cir. 1972). There were two possible defenses in the case at bar: (1) coercion exercised by Bianco upon Dingle and (2) the attack upon the credibility of the government witnesses. Mrs. Bean was detrimental in relation to the credibility defense. Reviewing the record as a whole, it cannot be said that Dingle's trial attorney rendered this trial a sham or a farce because of his failure to introduce Mrs. Bean's testimony. *Brady v. United States,* 433 F.2d 924 (10th Cir. 1970).

 Dingle argues that his counsel was incompetent because he did not record a request for Bean's presentence report. This contention is wholly without merit. A presentence report cannot be obtained under the Jencks Act, *supra.*

 Dingle's final broad-swipe argument that his counsel was incompetent is based on the proposition that he did not make a record of objections to jury instructions. However, Dingle does not point to any specific erroneous instruction. The argument is made in a vacuum and is without merit. We agree with the trial court's finding that Dingle's attorney rendered effective and competent representation at the trial.

WE AFFIRM.