Michael Alan CROOKER, Plaintiff,
Appellant,

v.

UNITED STATES PAROLE COMMIS-
SION, Defendant, Appellee.

No. 83–1687.

United States Court of Appeals,
First Circuit.

Argued Jan. 3, 1984.

Decided March 21, 1984.

Katherine A. Meyer, Washington, D.C., with whom John Cary Sims, Alan B. Morrison, and Eric R. Glitzenstein, Washington, D.C., were on brief, for appellant.

C. Brian McDonald, Asst. U.S. Atty., Washington, D.C., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, ALDRICH and BREYER, Circuit Judges.

COFFIN, Circuit Judge.

This case requires us to determine whether presentence reports are subject to the mandatory disclosure requirements of the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or more specifically, whether presentence reports are "agency records" within the meaning of the FOIA.

Plaintiff-appellant Michael Alan Crooker is on parole from federal prison. In October 1977, the probation office of the United States District Court for the District of Massachusetts prepared Crooker's presentence report for use in Crooker's sentencing before that court. Pursuant to Rule 32(c)(3) of the Federal Rules of Criminal Procedure, the court permitted Crooker to read his entire presentence report prior to sentencing. Crooker was not permitted to keep a copy of the report. After sentencing, the report was transferred to the United States Parole Commission, pursuant to the Parole Commission and Reorganization Act of 1976 (Parole Act), 18 U.S.C. § 4205(e), which requires the courts' probation officers to furnish "information available to such officer[s]" to the Commission upon request. Prior to his parole determination proceeding, in March 1980 Crooker again read his presentence report, which the Parole Commission had provided to Crooker under the mandate of 18 U.S.C. § 4208(b)(2), which requires the Commission to grant the prisoner "reasonable access" to a report to be used by the Commission in making a parole determination. The Parole Commission, like the sentencing court, did not permit Crooker to keep a copy of the report.

In January 1983, Crooker filed a FOIA request with the Parole Commission, seeking release of his presentence report and other documents. After Crooker commenced this FOIA action in federal district court, the Parole Commission released many documents, but withheld copies of his presentence report and medical (drug detoxification) records the Parole Commission

had obtained from the Elmcrest Psychiatric Institute. On cross-motions for summary judgment, the district court granted the Parole Commission's motion and denied Crooker's. In a brief memorandum and order, the district court held that the Parole Commission had properly withheld the presentence report on the basis of an order of the United States District Court for the District of Massachusetts [1] and on the basis of "the Parole Commission's power to make independent judgments concerning the identification of exemptable material." The district court also held that a presentence report is a court document, not an agency document, and is therefore not subject to the FOIA.

The court further ruled that the Parole Commission had properly withheld the medical records, because, according to the court, the Parole Act, 18 U.S.C. § 4208(c)(2), provides a specific statutory exemption from FOIA disclosure, 5 U.S.C. § 552(b)(3), for "material obtained upon the promise of confidentiality". The court ordered the Parole Commission to furnish Crooker with a summary of the contents of the medical records pursuant to the Parole Act, 18 U.S.C. § 4208(c). The Parole Commission complied with this order, and plaintiff appealed from the remainder of the district court's judgment.

## I. The Presentence Report

An agency need disclose only "agency records" under the FOIA, 5 U.S.C. § 552(a)(4)(B). Unfortunately, the FOIA contains no definition of "agency records", the crucial term in this case. *See Forsham v. Harris*, 445 U.S. 169, 178, 100 S.Ct. 977, 983, 63 L.Ed.2d 293 (1980). Nor does the FOIA's legislative history shed any helpful

light on this issue. *See McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1106 & n. 48 (D.C.Cir.), *vacated in part on other grounds*, 711 F.2d 1076 (D.C.Cir. 1983) (per curiam). The difficulty in deciding whether presentence reports are "agency records" arises from the hybrid function of the presentence report. The probation service of the United States courts creates the presentence report, Fed.R.Crim.P. 32(c)(1), and the courts are not agencies within the meaning of the FOIA. 5 U.S.C. § 551(1)(B). However, after the court has used the presentence report in sentencing a defendant, the probation officer must, upon request from the Parole Commission, transmit a copy of the presentence report to the Parole Commission for use in parole determinations. After transmittal, the report is jointly possessed by a FOIA-controlled agency (the Parole Commission), *see* 18 U.S.C. § 4218(a), and a FOIA-exempt entity (the courts).

In attempting to divine whether Congress intended presentence reports to be agency records under the FOIA, other courts have examined the relative degree of control exercised by the FOIA agency and the FOIA-exempt body over the contested documents. Of course "control" is a protean term, and courts have not adhered to a single variant of the control test for determining whether a document is an agency record for FOIA purposes. In *Carson v. U.S. Department of Justice*, 631 F.2d 1008 (D.C.Cir.1980), in which the court held that a presentence report is an agency record within the FOIA, the court applied the control test set out in an earlier opinion from that circuit, *Goland v. Central Intelligence Agency*, 607 F.2d 339, 346–47 (D.C. Cir.1978), *cert. denied*, 445 U.S. 927, 100

---

**1.** The order, signed on April 13, 1981, by all 10 active district court judges for the District of Massachusetts, stated:

"Any copy of a presentence report which the court makes available, or has made available, to the United States Parole Commission or the Bureau of Prisons constitutes a confidential court document and shall be presumed to remain under the continuing control of the court during the time it is in the temporary custody of these agencies. Such copy shall be lent to the Parole Commission and the Bureau of Prisons only for the purpose of enabling those agencies to carry out their official functions, including parole release and supervision, and shall be returned to the court after such use, or upon request. Disclosure of a report is authorized only so far as necessary to comply with Title 18, U.S.C., Section 4208(b)(2). Copies of presentence reports shall be stamped with an appropriate legend consistent with this order."

S.Ct. 1312, 63 L.Ed.2d 759 (1980). In *Goland,* the court decided that the FOIA's applicability to a document generated by an expressly exempted non-agency (in that case, Congress) depended on "whether under all the facts of the case the document has passed from the control of Congress and become property subject to the free disposition of the agency with which the document resides". *Carson,* 631 F.2d at 1010 (quoting *Goland,* 607 F.2d at 347); *accord Ryan v. Department of Justice,* 617 F.2d 781, 785 (D.C.Cir.1980); *Warth v. Department of Justice,* 595 F.2d 521, 523 n. 7 (9th Cir.1979).

The *Carson* court premised its decision on analysis of Rule 32(c) of the Federal Rules of Criminal Procedure, as amended in 1975, and the Parole Act of 1976. Prior to the 1975 amendment to Rule 32(c), the sentencing court enjoyed unfettered discretion to withhold any or all of the presentence report from the defendant. The *Carson* court noted that the amendments to Rule 32(c) substantially diluted the sentencing court's control over the presentence report, because Rule 32(c) now requires the court to disclose the contents of a presentence report to a defendant prior to sentencing. The court may withhold material that contains diagnostic opinions, confidential sources, or information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other person, but the sentencing court must summarize the factual information contained in withheld portions to be relied on in determining sentence. Fed.R.Crim.P. 32(c)(3)(A) & (B); *see Carson,* 631 F.2d at 1011–12.

The *Carson* court also held that the Parole Act indicated that the Parole Commission controlled presentence reports in its possession. The Parole Act expressly requires the Parole Commission to consider presentence reports, "if available and relevant", in making its parole determinations. 18 U.S.C. § 4207(3). The Parole Act also requires the probation officers of the

courts to furnish "information available to such officer[s]" to the Parole Commission upon request. 18 U.S.C. § 4205(e). Finally, the Act requires the Parole Commission to grant to requesting prisoners "reasonable access" to their presentence reports prior to parole determination hearings, subject to exemptions that are practically identical in substance to the exemptions provided by Rule 32(c)(3). 18 U.S.C. § 4208(b) & (c); *see Carson,* 631 F.2d at 1012–15. The *Carson* court concluded that because "[t]he presentence report is, after all, central to the Parole Commission's primary function", it should constitute an agency record for FOIA purposes. 631 F.2d at 1015.

Although the Supreme Court has not yet ruled directly on the control test employed in *Carson,* the Court gave implicit approval to that standard in *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 157, 100 S.Ct. 960, 972, 63 L.Ed.2d 267 (1980). In *Kissinger,* the Court held that transcripts of telephone conversations recorded by Henry Kissinger while he was National Security Adviser to the President (and thus exempt from the FOIA, 445 U.S. at 156, 100 S.Ct. at 971) did not become agency records merely by their relocation to the State Department during Kissinger's tenure as Secretary of State. In rejecting the argument that mere possession could be determinative of agency record status, the Court noted that the State Department (a FOIA agency) did not control, generate, or use the documents.[2] *Id.* 445 U.S. at 157, 100 S.Ct. at 972.

More recently, the D.C. Circuit has attempted to refine the *Goland/Carson* control test in light of the Supreme Court's decision in *Kissinger.* Whereas cases decided under the *Goland* standard had focused on the control retained by the creator of the document, *Kissinger* focused on the degree of control exercised by the agency that has received the document. In *Paisley v. Central Intelligence Agency,* 712

---

**2.** In *Forsham v. Harris, supra,* the Court held that an agency must "create or obtain" a record as a prerequisite to it becoming a FOIA "agency record". 445 U.S. at 182, 100 S.Ct. at 985. The

Court explained further that creation or possession was a necessary, but not always sufficient, condition. *Id.* 445 U.S. at 185 n. 16, 100 S.Ct. at 987 n. 16.

F.2d 686, 693 (D.C.Cir.1983), the court reconciled the cases as "standing for the general proposition that the agency to whom the FOIA request is directed must have *exclusive control* of the disputed documents" (emphasis added).[3]

Rather than attempt further to parse the labels "control", "exclusive control" and "free disposition", we admit that "control" for FOIA purposes has no precise definition and may well change as relevant factors assume varying importance from case to case. The key factor in this inquiry is congressional intent: Did Congress give the Parole Commission sufficient control, relative to control given to the courts, over presentence reports to make such reports agency records under the FOIA? Perhaps wisdom lies in recognizing that where Congress has sought to make one report serve two uses, each of the two users obviously exercises some "control". This is not really a "joint venture" situation as the Court briefly contemplated in *Forsham*, 445 U.S. at 180, 100 S.Ct. at 984, but rather a dual venture situation. The inquiry is not merely to see which of the two users has more numerous indicia of control, but to inquire more deeply as to whether the completeness of the agency's dominion over and the centrality of its reliance upon the report are such as to outweigh the compelled surrender by the non-agency (the court) of its traditional and statutorily authorized discretion to withhold distribution.

We begin by disavowing reliance on two factors that might ordinarily be thought controlling. The first is the order issued by the judges of the District Court for the District of Massachusetts. *See supra* note 1. Since an expression of intent by a court to retain control over a presentence report is valid only insofar as the court's expression of intent does not contravene the intent of Congress, to say that the intent of the originating court illuminates the intent of Congress would involve circular reasoning. We therefore find that the judges' order has no relevance to our inquiry into whether the court or the Parole Commission controlled the presentence report in this case. *Cf. Lykins,* at 1460.

A second factor is the weight of authority, i.e., the fact that opposed to the decisions we have cited from the District of Columbia circuit stand three courts of appeals cases (from two circuits) and one district court case. We distance ourselves from these cases, however, because they devoted little or no analysis to the control issue or antedated the statutory changes on which *Carson* placed so much stress. These cases are: *United States v. Charmer Industries, Inc.,* 711 F.2d 1164, 1170 n. 6 (2d Cir.1983) (presentence report is a court document not within purview of the FOIA, notwithstanding use or retention of report by Parole Commission); *United States v. Dingle,* 546 F.2d 1378, 1381 (10th Cir.1976); *Cook v. Willingham,* 400 F.2d 885, 885–86 (10th Cir.1968) (per curiam) (presentence report remains in exclusive control of sentencing court despite any joint utility it may eventually serve); *Smith v. Flaherty,* 465 F.Supp. 815, 819 (M.D.Pa.1978) (same). The most recent case, *Charmer Industries,* did not mention *Carson.* The other three cases were decided before *Carson,* and *Cook,* which the Tenth Circuit reaffirmed without discussion in *Dingle,* was decided before the passage of the statutes (Parole Act and amended Fed.R.Crim.P. 32(c)) that *Carson* found determinative.

---

3. The *Paisley* "exclusive control" standard has not, however, established itself as the accepted test for agency record status. The "exclusive control" test stands at odds with the D.C. Circuit's recent reaffirmation that presentence reports are agency records under the FOIA. *See Lykins v. United States Department of Justice,* 725 F.2d 1455, 1458–1460 (D.C.Cir.1984). Judge Wright, who authored both *Paisley* and *Lykins,* did not mention *Paisley* in *Lykins* and instead applied the pre-*Paisley* control test of *Goland* and *Carson. See supra* at 1455. Given the joint possession of presentence reports by the courts and the Parole Commission, the creation of the reports by the courts, and the far from unambiguous allocation of control over the reports established by relevant federal statutes, it seems to us that the "exclusive control" test of *Paisley* is incompatible with the subsequent confirmation in *Lykins* of *Carson's* holding that presentence reports are agency records for FOIA purposes.

6

To begin our inquiry, we look at the court's power over and use of the presentence report. A probation officer acting as an arm of the court creates the presentence report for the purpose of informing the court's discretion prior to sentencing. *See United States v. Charmer Industries, Inc.*, 711 F.2d at 1170 ("principal function of the presentence report is to assist the court in determining the appropriate sentence") (citation omitted); *United States v. Burton*, 631 F.2d 280, 282 (4th Cir.1980); *United States v. Krause*, 78 F.R.D. 203, 204 (E.D.Wis.1978).[4]

■ Congress has empowered the courts to decide in which situations a presentence report is needed. The probation officer need not create a presentence report if the court finds that the record contains sufficient information to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record. Fed.R.Crim.P. 32(c)(1); *see Hazelwood v. Arnold*, 539 F.2d 1031, 1033–34 (4th Cir. 1976) (per curiam) (ordering of presentence investigation and report is discretionary with court); *United States v. James*, 528 F.2d 999, 1023 (5th Cir.), *cert. denied*, 429 U.S. 959, 97 S.Ct. 383, 50 L.Ed.2d 326 (1976). If a court determines that a presentence report would not aid *the court* in its sentencing function, no presentence report exists for the Parole Commission to obtain. Although the Parole Act requires the Parole Commission to consider available and relevant presentence reports in making parole determinations, 18 U.S.C. § 4207(3), and requires probation officers to furnish the Commission with "information available" to them, 18 U.S.C. § 4205(e),

both of these provisions have effect only in situations in which the report is "available". If Congress had believed that presentence reports were more important to the Parole Commission than to the courts, Congress might have ordered probation officers to create a presentence report to be forwarded to the Parole Commission in every case, regardless of whether the sentencing court needed a presentence report. But Congress did not do so.[5]

Rule 32(c)(3) of the Federal Rules of Criminal Procedure provides that prior to sentencing, the court shall upon request permit the defendant or his counsel to read the presentence report, exclusive of any recommendation as to sentence. The court may exclude from disclosure "diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons". Fed.R.Crim.P. 32(c)(3)(A).

If the court withholds any of the presentence report, the court must provide an oral or written summary not of *all* of the withheld information, but only "of the *factual* information contained therein *to be relied on in determining sentence...*" Fed.R.Crim.P. 32(c)(3)(B) (emphasis added). The sentencing court may in its discretion withhold, without summarizing, any portion of the presentence report merely by not relying on that portion of the report in determining the defendant's sentence.[6] *E.g., United States v. Long*, 411 F.Supp. 1203, 1206 (E.D.Mich.1976).

4. In deciding whether a document is an agency record, courts have considered the originating entity's role and the agency's role, if any, in creating the document. *E.g., Kissinger*, 445 U.S. at 157, 100 S.Ct. at 972; *Paisley*, 712 F.2d 692.

5. Of course, in this case the probation officer in fact prepared a presentence report and forwarded it to the Parole Commission as required. These facts do not diminish the probative value of evaluating the overall congressional scheme for treatment of presentence reports. *See, e.g., Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974).

6. The *Carson* court understated the sentencing court's discretion by too simply stating that the types of information specified in Rule 32(c)(3)(A) are "not required to be disclosed verbatim but may instead be summarized for the defendant by the sentencing court". *Carson*, 631 F.2d at 1011 (footnote omitted). The *Carson* court's restatement of Rule 32(c)(3)(B) gives the misleading impression that the sentencing court must summarize for the defendant *all* material that the court does not disclose directly.

We find additional significance in the court's statutorily granted discretion to release the presence report into the permanent possession of the defendant. Fed. R.Crim.P. 32(c)(3)(D) directs the defendant to return his copy of the presence report following the imposition of sentence, "unless the court, in its discretion otherwise directs". Although the mandatory disclosure requirements and exemptions in the Parole Act trace many features of the mandatory disclosure requirements and exemptions of Rule 32(c), *compare* Fed.R.Crim.P. 32(c)(3)(A) *with* 18 U.S.C. § 4208(c)(1)–(3), *see* H.Conf.Rep. No. 94–838, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 335, 361, the Parole Act contains no provision analogous to Rule 32(c)(3)(D). The Parole Act does not permit the Parole Commission to allow a prisoner to retain a copy of his presence report. This difference provides evidence of greater court control relative to Parole Commission control over the presence report.

▮ Next, we examine the Parole Commission's power over and use of presence reports. The use of the presence report by the Parole Commission clearly does not suffice to convert the presence report from a court document into an agency record. *See United States v. Charmer Industries, Inc.,* 711 F.2d at 1170 & n. 6 (presence report remained court document despite use by Parole Commission); *Smith v. Flaherty,* 465 F.Supp. at 819 (Bureau of Prisons' possession and use of presence report did not transform it into agency record).[7] Although the presence report may in some cases be central to the Parole Commission's primary function of making parole determinations, *see, e.g.,* Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presence Reports in Federal Courts,* 93 Harv.L.Rev. 1613, 1617 & n. 13 (1980); Note, *A Proposal to Ensure Accuracy in Presence Investiga-tion Reports,* 91 Yale L.J. 1225, 1234 & n. 56 (1982), the presence report's primary function is not that of aiding the Commission. The Parole Commission may gain access to the presence report only if it is "available", that is, if the sentencing court had decided that a presence report would aid the court's sentencing discretion. In some cases, the report may simply not exist. Even where the report does exist, it is current and therefore fully relevant when the court considers it; it may well have become out of date, perhaps very old, when the Commission considers it. The longer a convicted offender's term of incarceration ánd/or parole, the less relevant the presence report will tend to be to a parole determination. Whether a prisoner has substantially observed the rules of the institution to which he has been confined serves as an important criterion for a parole determination, 18 U.S.C. § 4206(a) & (d), and common sense suggests that reports of behavior during incarceration will assume greater importance relative to presence behavior the longer the term of imprisonment.

In addition, the presence report constitutes only one of five sources of information that the Commission "shall consider, if available and relevant", in making a parole determination. 18 U.S.C. § 4207. The other sources of information include reports and recommendations from prison staff, the prisoner's prior criminal record, any parole recommendations made by the sentencing judge, and reports of physical, mental, or psychiatric examinations of the prisoner. The statute also requires the Commission to consider "such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available".

In addition, Congress gave the Parole Commission less discretion than Congress gave the courts concerning the summariza-

---

7. *Cf. Warth v. Department of Justice,* 595 F.2d at 522–23 (use of trial transcript by agency did not transform transcript into agency record); *Valenti v. United States Department of Justice,* 503 F.Supp. 230, 233 (E.D.La.1980) (statutory re-quirement that grand jury transcript be transferred to attorney for the government did not change "essential nature" of transcript from court record to agency record).

tion of withheld information. The exemptions from disclosure under the Parole Act, 18 U.S.C. § 4208(c), resemble those listed in Fed.R.Crim.P. 32(c)(3)(A), which governs exemptions from disclosure of presentence reports before sentencing. However, the statutes differ regarding the degree of discretion vested in the entity (the Commission or the courts) that must summarize withheld material for the defendant/prisoner. The Parole Act requires the Commission "to summarize the basic contents of the material withheld, bearing in mind the need for confidentiality or the impact on the inmate, or both, and furnish such summary to the inmate". The Commission, unlike the sentencing court, may not withhold without having to summarize nonfactual information (such as opinions or predictions) or information on which the Commission will not rely in making a parole determination. The court, by contrast, need only summarize "factual information ... to be relied on in determining sentence". Fed.R.Crim.P. 32(c)(3)(B). The Parole Act's command that the Commission "bear[ ] in mind the need for confidentiality or the impact on the inmate" in summarizing withheld information provides the Commission with no greater discretion than is already provided by the Commission's power to decide whether given material falls within the disclosure exceptions of 18 U.S.C. § 4208(c)(1)–(3).

Finally as stated above, Congress denied the Parole Commission the discretion to permit the prisoner to retain a copy of his presentence report. Rule 32(c)(3)(D) expressly grants such discretion to the sentencing court.

In sum, a document created by and for the court, subject to the discretion of the court to release, is now made available (if it exists) to the Parole Commission, as a more marginal document, supplemented by more recent and perhaps more relevant data, but without discretion to release.

We come now to the critical question: is the possible effect on the sentencing process such that it can be said that Congress intended the compelled release of presentence reports under the FOIA? If so, the FOIA would permit a quick end run around the court's discretion to refuse release of the report to the defendant after sentencing. In this case, we deal with a request by a convicted offender, the subject of the presentence report, but a holding that presentence reports constitute agency records and therefore come within the mandatory disclosure requirements of the FOIA would make copies available (shortly after sentencing) not only to the subject of a presentence report, but also to any third-party requester. Journalists might want hearsay statements about the crime never used in evidence. Police departments might want details about suspected criminal activity. Scholars, researchers, and authors might want information about family background, personal relationships, and community ties. Associates of defendant might want to know if defendant or anyone else implicated them in criminal activity. The report contains in addition such items as defendant's official arrest and conviction record, any recorded contacts with the military, schools, banks, and credit bureaus, and the results of interviews with social service agencies, present and former employers, family members, friends, and neighbors. The report also typically contains medical and clinical evaluations of defendant's physical and mental health. *See* Fennell & Hall, *supra*, 93 Harv.L.Rev. at 1624–25. Both the sources and subjects of information in the presentence report may fear significant adverse consequences from disclosure of the report to the public.

A convicted offender and his family may well feel jeopardized by retrospective accounts in newspapers; the offender's credit, chances of employment, reception in a given community, and personal and family morale can generally only be harmed rather than helped by open disclosure of his presentence report. Knowledge that anyone could obtain verbatim copies of the report to use (a) to obtain retraction or counterstatement or (b) to be a basis for impeaching action or (c) a basis for vindictive action would only tend to impede the free flow of information—from the accused

and from sources independent of the accused—to probation officers who compile presentence reports. *See United States v. Dingle*, 546 F.2d at 1381; *United States v. Greathouse*, 484 F.2d 805, 807 (7th Cir. 1973). There can be debate as to the gravity of the results of publicity. But there can be no dispute that the net effect on the ability of a probation officer to develop a complete presentence report is to diminish that ability and that completeness, making the reports less useful to the sentencing court.

We are mindful that a holding that presentence reports are agency records would not automatically result in FOIA-compelled disclosure of presentence reports to third parties. Such a holding would merely require the Parole Commission to process FOIA requests for presentence reports. The Commission could then perhaps rely on one of the nine exemptions, 5 U.S.C. § 552(b)(1–9), to the FOIA's disclosure requirements to withhold all or part of the report. For instance, the Parole Commission's statutory authority to withhold certain categories of information from the prisoner, 18 U.S.C. § 4208(c), might provide a basis for withholding such information under FOIA exemption 3. *Cf. Lovell v. Alderete*, 630 F.2d 428, 434 (5th Cir.1980) (justifying withholding of parole recommendation report under FOIA exemption 3). However, exemption 3, like all FOIA exemptions, must be narrowly construed, and much sensitive material could fall on the margins of 18 U.S.C. § 4208(c)(1)–(3) and thus might not be protected from FOIA-compelled disclosure.

A prisoner's tax or banking history contained in a presentence report might be protected from disclosure under exemption 4, but only if such information was "obtained from a person and privileged and confidential". *See, e.g., 9 to 5 Organization for Women Office Workers v. Board of Governors of the Federal Reserve System*, 721 F.2d 1, 9–10 (1st Cir.1983) (information considered confidential under exemption 4 only if government shows that disclosure "will harm an identifiable private or governmental interest which the Congress sought to protect by enacting exemption 4"); *Consumers Union of United States, Inc. v. Veterans Administration*, 301 F.Supp. 796, 802–03 (S.D.N.Y. 1969) (information obtained from inside the government not exempt), *appeal dismissed as moot*, 436 F.2d 1363 (2d Cir.1971).

One court has suggested that an entire presentence report might be exempted from disclosure as a predecisional consultative document under exemption 5. *See Smith v. Flaherty*, 465 F.Supp. at 819 n. 12. However, most courts have limited the scope of exemption 5 to protect from disclosure only those documents that reflect inter- or intra-agency "give and take" during policy development. *See, e.g., Parke, Davis & Co. v. Califano*, 623 F.2d 1, 6 (6th Cir.1980); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980). Presentence reports may well not fit within this exemption.

The entire report or portions thereof, if considered similar to "personnel and medical files" and if disclosure "would constitute a clearly unwarranted invasion of personal privacy", might be exempt from disclosure under exemption 6. *Cf. Malloy v. U.S. Department of Justice*, 457 F.Supp. 543, 545 (D.D.C.1978) (criminal history records of third parties protected under exemption 6 from disclosure). However, exemption 6 would apply only if presentence reports were considered to be similar to personnel or medical files and if the privacy interest *clearly* outweighed the public interest in disclosure. *E.g., Philadelphia Newspapers, Inc. v. United States Department of Justice*, 405 F.Supp. 8, 11 (E.D.Pa.1975) (permitting disclosure of letters from private persons to federal parole board, despite exemption 6, because of public's interest in factors that prompted early parole of former public official).

Portions of the report that, if released, would constitute an unwarranted invasion of personal privacy or would divulge the identity of a confidential source might be withheld under exemptions 7(C) or 7(D), respectively. While the 7(C) "per-

sonal privacy" exemption would at first glance appear to provide an obvious bulwark against disclosure to third parties of information in presentence reports, disclosure may nonetheless be required if the public interest in disclosure—which is significant in matters relating to crime—outweighs the prisoner's privacy interest. Exemption 7(C) only prevents *unwarranted* invasions of personal privacy. *E.g., Columbia Packing Co. v. United States Department of Agriculture*, 563 F.2d 495, 499–500 (1st Cir.1977); *see New England Apple Council v. Donovan*, 725 F.2d 139, 143 (1st Cir.1984) (exemption 7(C) requires balancing privacy interest against public interest in disclosure). And to invoke exemption 7(D), the government must show that the source provided information to the probation officer under an express or implied assurance of confidentiality. *See id.* at 145.

■ Crooker's attorney asserted for the first time at oral argument that the Privacy Act, 5 U.S.C. § 552a, would bar FOIA disclosure to third parties of the contents of presentence reports unless the prisoner consented to such disclosures. However, the Privacy Act by its terms cannot justify withholding information where the FOIA requires disclosure. 5 U.S.C. § 552a(b)(2) (Privacy Act's consent requirement does not apply to disclosures required by the FOIA); *see Porter v. United States Department of Justice*, 717 F.2d 787, 794 (3d Cir.1983); *Greentree v. U.S. Customs Service*, 674 F.2d 74, 79 (D.C.Cir.1982); *Antonelli v. Federal Bureau of Investigation*, 553 F.Supp. 19, 22–23 (N.D.Ill.1982).

Although one or more of the FOIA exemptions *might* apply in any given case, uncertainty surrounding their scope might inhibit the free flow of information to probation officers who compile presentence reports. The likely chilling or congealing effect on the probation officer—presentence report—judicial sentencing system cannot be dissipated by any such catalogue of exceptions. The fact remains that litigation is possible following the withholding of any FOIA-covered document. Given that

the exemptions should be narrowly construed to promote the FOIA's "dominant objective" of "the fullest responsible" disclosure, *Department of the Air Force v. Rose*, 425 U.S. 352, 361–62, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), facial applicability of an exemption cannot guarantee nondisclosure of sensitive information. The burden of proving that an exemption justifies nondisclosure remains on the agency, while the person(s) who could be adversely affected by the disclosure may not even know of the request.

Congress has already decided that the goal of ensuring accuracy at sentencing and at parole determinations justifies at least partial disclosure of the presentence report to the defendant/prisoner, notwithstanding any concomitant reduction in the completeness of information contained in the reports. However, when Congress permitted the sentencing court and the Parole Commission to withhold certain enumerated types of information from the defendant/prisoner, Congress evidenced its desire to maintain the competing interest in completeness while requiring partial disclosure at specific times for limited durations. *See* Fed.R.Crim.P. 32(c)(3)(A); 18 U.S.C. § 4208(c); *see also United States v. Woody*, 567 F.2d 1353, 1360–61 (5th Cir.) (amended Rule 32(c) balances competing interests), *cert. denied*, 436 U.S. 908, 98 S.Ct. 2241, 56 L.Ed.2d 406 (1978); Fennell & Hall, *supra*, 93 Harv.L.Rev. at 1634 (Rule 32(c)(3) represents "sophisticated compromise" between interests in reliability and completeness). Disclosures to third parties might well sacrifice the interest in completeness without providing any compensating benefit in terms of promoting accuracy.

■ We therefore hold that it is inappropriate to deem presentence reports to be agency records and thereby not only to override the judicial discretion over release given by Fed.R.Crim.P. 32(c)(3)(D) and to add to the statutory discretion given the Parole Commission, but to change the longstanding rules governing the sentencing process and to threaten to erode the integ-

rity, completeness, and usefulness of the presentence report. The limited disclosure requirements that apply to the courts and the Parole Commission represent a carefully tailored compromise that evolved from many years of full debate. Any further change should come from Congress.

Our holding does not necessarily bar Crooker from receiving a copy of his presentence report. Although Crooker may not compel disclosure of his presentence report from the Parole Commission under the FOIA, he may still request a copy of his presentence report from the sentencing court. *See* Fed.R.Crim.P. 32(c)(3)(D).

## II. Disclosure of Medical Records

■ Crooker also made a FOIA request to the Parole Commission for medical records that the Commission had obtained from the Elmcrest Psychiatric Institute, where Crooker had taken part in a drug detoxification program. The district court approved the Commission's decision to withhold these medical reports under FOIA exemption 3, 5 U.S.C. § 552(b)(3), in light of the specific statutory exemption from disclosure contained in 18 U.S.C. § 4208(c)(2), but ordered the Commission to provide Crooker with a summary of the Elmcrest records. Section 4208(c)(2) states that the Parole Act requirement that the Commission provide a prisoner with "reasonable access" to documents used by the Commission in making parole determinations, 18 U.S.C. § 4208(b)(2), "shall not apply to ... any document which reveals sources of information obtained upon a promise of confidentiality". This confidentiality provision in the Parole Act satisfies the FOIA exemption 3 requirement that the statutory prohibition on disclosure "establishes particular criteria for withholding or refers to particular types of matters to be withheld".

In support of its attempt to withhold Crooker's medical records, the government submitted to the district court an affidavit and letter from Parole Commission Regional Counsel Henry Sadowski, stating that Elmcrest Psychiatric Institute had provided the records to the Parole Commission under a promise of confidentiality and that Elmcrest did not consider the records disclosable to Crooker. Based on these representations and on an *in camera* inspection of the medical records, the district court found that Elmcrest released the report to the Parole Commission only upon a promise of confidentiality. The court then held that the FOIA disclosure requirements would be satisfied by the provision of a summary of the contents of the Elmcrest records, as required by 18 U.S.C. § 4208(c) prior to parole determination hearings.

■ We have examined the *in camera* submissions. While release of the entire medical record to Crooker would clearly reveal some confidential sources, the FOIA nonetheless requires disclosure of all reasonably segregable, nonexempt portions of a record. *See* 5 U.S.C. § 552(b); *County of Madison v. United States Department of Justice*, 641 F.2d 1036, 1043 (1st Cir.1981). The summary of the medical records that the Commission provided to Crooker on September 23, 1983, pursuant to court order provides an accurate, albeit somewhat elliptical outline of the contents of the medical records.

The district court ordered the Commission to prepare the summary pursuant to 18 U.S.C. § 4208(c). This subsection of the Parole Act requires the Commission to provide a summary of the contents of any material withheld from the prisoner prior to a parole determination hearing. That subsection should not govern required disclosures of partially exempt documents under the FOIA. The FOIA requirement that the requester receive all reasonably segregable data may well provide the requester with more information than he would receive if the Commission, in processing a FOIA request, had only to "summarize the basic contents of the material withheld" from a document that came within the § 4208(c) exemption. The latter provision governs the extent of partial disclosure in the parole pre-hearing context, not the FOIA context.

On the record before us, it appears that the court could perhaps order the release of more of the Elmcrest records without revealing the source of confidential information contained therein. FOIA exemption 3 and 18 U.S.C. § 4208(c)(2) protect from disclosure only "sources of information obtained upon a promise of confidentiality", not the *substance* of information obtained upon a promise of confidentiality. We recognize that in some cases the disclosure of information would implicitly disclose its source. We remand this issue to the district court to determine if no more information from the Elmcrest records could be released without disclosing the source of the information. *See Church of Scientology v. United States Department of the Army*, 611 F.2d 738, 743–44 (9th Cir.1979) (remanding to district court for specific findings regarding segregability). We realize that our decision to remand may be overly formal, given that the Commission has already given Crooker much of the disclosable content of the Elmcrest records. However, since it appears that the district court applied an incorrect yardstick to measure disclosure of portions of a document that came within a FOIA exemption, only further—and in all likelihood brief—consideration by the district court will ensure that the Parole Commission has fully complied with the FOIA.

The district court may wish to seek further assistance from the parties in determining the permissible extent of further disclosure. Unless nonexempt portions are inextricably interwined with portions that explicitly or implicitly reveal a confidential source, all nonexempt information in the Elmcrest medical report should be disclosed to Crooker.

*The judgment of the district court is affirmed in part, and vacated and remanded in part; parties to bear their own costs on appeal.*