Richard S. BERRY, Plaintiff-Appellant,

v.

DEPARTMENT OF JUSTICE, et al., Defendants-Appellees.

No. 83–1854.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1984.

Decided May 30, 1984.

Michael E. St. George, Tempe, Ariz., for plaintiff-appellant.

Susan A. Ehrlich, Phoenix, Ariz., for defendants-appellees.

Before GOODWIN, PREGERSON and NELSON, Circuit Judges.

NELSON, Circuit Judge:

■ While awaiting a parole hearing, appellant Richard S. Berry sought copies of his presentence investigation report and Report on Sentenced Offender from the United States Parole Commission. When his request was denied, Berry filed this action pursuant to the Freedom of Information Act (FOIA). The district court dismissed Berry's suit on the ground that the reports are court documents and thus exempt from disclosure under the FOIA. Berry appealed. Because presentence investigation reports and Reports on Sentenced Offenders are agency records when they are in the possession of either the Federal Bureau of Prisons or the Parole Commission, we reverse and remand for additional proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Richard S. Berry was sentenced to three years imprisonment for conspiracy to transport money obtained by interstate fraud. In compliance with Federal Rule of Criminal Procedure 32(c),[1] Berry was permitted to review his presentence investiga-

---

1. Prior to 1983, Federal Rule of Criminal Procedure 32(c) provided, in pertinent part:

   (C) Presentence Investigation.

   . . . .

   (3) Disclosure.

   (A) Before imposing sentence the court shall upon request permit the defendant, or his counsel if he is so represented, to read the report of the presentence investigation exclusive of any recommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opinion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons; and the court shall afford the defendant or his counsel an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report.

   (B) If the court is of the view that there is information in the presentence report which should not be disclosed under subdivision (c)(3)(A) of this rule, the court in lieu of making the report or part thereof available shall state orally or in writing a summary of the factual information contained therein to be relied on in determining sentence, and shall give the defendant or his counsel an opportunity to comment thereon. The statement may be made to the parties in camera.

   (C) Any material disclosed to the defendant or his counsel shall also be disclosed to the attorney for the government.

   (D) Any copies of the presentence investigation report made available to the defendant or his counsel and the attorney for the government shall be returned to the probation officer immediately following the imposition of sentence or the granting of probation, unless the court, in its discretion otherwise directs. The revisions to Rule 32 that became effective after this lawsuit was filed do not alter our analysis. See Fed.R.Crim.P. 32(c) (August 1, 1983).

tion report prior to sentencing. He was not permitted to retain a copy of the report. Similarly, in compliance with the Parole Commission and Reorganization Act, 18 U.S.C. § 4201 *et seq.* (1976),[2] Berry was permitted to review both his Report on Sentenced Offender and his presentence report briefly before his parole hearing.[3] Berry requested copies of the presentence report, the Report on Sentenced Offender, and other documents from the Federal Bureau of Prisons, the Parole Commission, and, ultimately, from the Department of Justice. Although a number of documents were given to Berry, he was denied copies of his presentence report and Report on Sentenced Offender. Berry filed this lawsuit pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (1976), to obtain copies of the contested documents.

The government moved to dismiss the action on the ground that the undisclosed documents are court records and are thus exempt from disclosure under the FOIA. This motion was granted on March 14, 1983. Plaintiff filed a timely appeal.

## DISCUSSION

### I. Background

The FOIA was enacted in 1966 to "permit access to official information long shielded unnecessarily from public view." *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). It requires government agencies to make "agency records" available to any person for a nominal charge. 5 U.S.C. §§ 552(a)(3), (a)(4)(A) & (a)(4)(B) (1976). Although the term "agency records" is not defined in the FOIA, the definition of "agency" expressly exempts "courts," among other institutions, from its coverage. 5 U.S.C. § 551(1)(B) (1976). This case requires us to determine whether presentence investigation reports and Reports on Sentenced Offenders in the possession of specified government agencies are agency records or court documents for the purposes of the FOIA.

Presentence investigation reports are prepared by court probation officers. They contain a broad range of information about a defendant's background, recommend a sentence to the court, suggest a treatment plan, and contain an independent investigation of the offense charged. Fennell & Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts,* 93 Harv.L.Rev. 1613, 1617 (1980) (hereinafter "Fennell & Hall"). The report is used by the court in the sentencing process, *see* Division of Probation, Administrative Office of the United States Courts, *The Presentence Investigation Report* 1 (1978), and by the Bureau of Prisons to classify

---

**2.** The Parole Commission and Reorganization Act provides, in pertinent part:

§ 4208. Parole determination proceeding; time

. . . .

(b) At least thirty days prior to any parole determination proceeding, the prisoner shall be provided with (1) written notice of the time and place of the proceeding, and (2) reasonable access to a report or other document to be used by the Commission in making its determination. A prisoner may waive such notice, except that if notice is not waived the proceeding shall be held during the next regularly scheduled proceedings by the Commission at the institution in which the prisoner is confined.

(c) Subparagraph (2) of subsection (b) shall not apply to—

(1) diagnostic opinions which, if made known to the eligible prisoner, could lead to a serious disruption of his institutional program;

(2) any document which reveals sources of information obtained upon a promise of confidentiality; or

(3) any other information which, if disclosed, might result in harm, physical or otherwise, to any person.

If any document is deemed by either the Commission, the Bureau of Prisons, or any other agency to fall within the exclusionary provisions of subparagraphs (1), (2), or (3) of this subsection, then it shall become the duty of the Commission, the Bureau, or such other agency, as the case may be, to summarize the basic contents of the material withheld, bearing in mind the need for confidentiality or the impact on the inmate, or both, and furnish such summary to the inmate.

18 U.S.C. § 4208 (1976).

**3.** Berry was permitted to view the reports once, for approximately one hour, 30 days before his parole hearing.

and plan the release of prisoners, *United States v. Cesaitis,* 506 F.Supp. 518, 520 (E.D.Mich.1981). In addition, the Parole Commission is statutorily required to rely upon the document in making parole determinations. 18 U.S.C. § 4207 (1976).

The Report on Sentenced Offender is prepared by the sentencing judge. It presents a statement of sentencing objectives and a recommendation of the type of institution in which the defendant should be imprisoned. It also permits the judge to comment on treatment needs and the propriety of parole. Like the presentence report, the Report on Sentenced Offender is forwarded to the Bureau of Prisons and the Parole Commission and is relied upon in making correctional decisions affecting the prisoner. The Report is intended to promote communication between the sentencing judge and correctional authorities to encourage "consistent treatment of the defendant at the sentencing and parole release stages." Fennell & Hall, *supra,* 93 Harv.L.Rev. at 1683.

II. The Split Between the Circuits

A. The D.C. Circuit Standard

The issue we confront today was first addressed by the D.C. Circuit in *Carson v. Department of Justice,* 631 F.2d 1008 (D.C.Cir.1980) (hereinafter "*Carson*"). There, presentence reports, "central to the Parole Commission's primary function," were deemed to be agency records. *Id.* at 1015. Although, for reasons outlined below, we are not free to adopt the *Carson* rationale in its entirety, Judge Wald's analysis offers much guidance in determining whether documents are court or agency records.

*Carson* traces the history of 'agency records' cases under the FOIA. *Cook v. Willingham,* 400 F.2d 885 (10th Cir.1968) (per curiam) (hereinafter "*Cook*"), was the first reported decision to address the avail-

ability of presentence reports under the FOIA. There, a two-judge motions panel issued a three-paragraph per curiam decision summarily affirming denial of access to a presentence report under the FOIA.

*Cook* was cited with approval in *Goland v. Central Intelligence Agency,* 607 F.2d 339, 346 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (hereinafter "*Goland*").[4] There, the D.C. Circuit enunciated a "control" test to determine if a document should be deemed an agency record. The court reasoned that once a document "has passed from the control of Congress and become property subject to the free disposition of the agency" it must be treated as an agency record under the FOIA. *Id.* at 347. In determining who controlled the documents in *Goland,* the court relied heavily on the confidentiality of the papers at issue. Since one of the documents—a transcript of a secret Congressional hearing on military intelligence and the CIA—had been temporarily released to the agency under a command of secrecy, the court concluded that the agency did not have sufficient control to transform it into an agency record. *Id.* at 347–48.

The *Goland* standard was applied and disclosure ordered in *Ryan v. Department of Justice,* 617 F.2d 781 (D.C.Cir.1980). There, the court held that senators' responses to a Department of Justice questionnaire were agency records. Absent "evidence of control by some other entity," the documents were deemed to be controlled by the Department of Justice. *Id.* at 786. Thus, they were discoverable under the FOIA.

After reviewing these cases, the *Carson* court applied their rationale to presentence reports. It noted two major changes in the treatment of presentence reports since the *Cook* decision. First, Federal Rule of Criminal Procedure 32(c), adopted in 1975,

---

**4.** The *Goland* control test was reaffirmed in *Lykins v. United States Department of Justice,* 725 F.2d 1455 at 1458–1462 (D.C.Cir.1984). We believe that *Goland* remains the law of the D.C. Circuit despite occasional intervening cases to the contrary. *See Paisley v. Central Intelligence*

*Agency,* 712 F.2d 686, 693 (D.C.Cir.1983). *See also Crooker v. United States Parole Commission,* 730 F.2d 1 at 5 & n. 3 (1st Cir.1984) (*Paisley* and *Lykins* are inconsistent, but *Lykins* is probably the law).

requires sentencing courts, upon request, to show defendants substantial portions of presentence reports. Second, the Parole Commission and Reorganization Act, 18 U.S.C. § 4201 *et seq.* (1976), expressly requires parole authorities to consider available presentence reports in making parole determinations. The court read this requirement to vest "the Parole Commission with a degree of control over available reports commensurate with the fulfillment of its statutory mission as an agency." *Carson,* 631 F.2d at 1013. *Carson* concluded that presentence investigation reports were agency records and remanded the case for additional proceedings. The D.C. Circuit has recently reaffirmed its commitment to the *Carson* approach. *See Lykins v. United States Department of Justice,* 725 F.2d 1455 (D.C.Cir.1984).[5]

### B. The First Circuit Approach

The First Circuit differs with the D.C. Circuit over whether presentence reports are agency records under the FOIA. In *Crooker v. United States Parole Commission,* 730 F.2d 1 (1st Cir.1984) (hereinafter *"Crooker"*), the First Circuit held that presentence reports do not constitute agency records.

*Crooker* acknowledged that the *Goland* control test is properly applied to determine whether documents are agency records. *Crooker,* 730 F.2d at 3–6. When it applied this test, however, *Crooker* concluded that the Parole Commission does not exercise sufficient control over presentence reports to convert them into agency records.

*Crooker* analyzed the relative control exercised over presentence reports by the courts and the Parole Commission. It found court control to be fairly pervasive. Courts can, in some circumstances, choose not to have presentence reports written, *id.* at 6, they need not reveal to defendants those parts of the report that are not relied upon in sentencing, *id.* at 6–7, and,

under Rule 32, they have discretion to leave a copy of the report in the defendant's possession. *Id.* at 7.

Conversely, *Crooker* found the Parole Commission to exercise little control over presentence reports. The Parole Commission cannot require that a presentence report be written, although it must rely on reports that are already available, *id.* at 7, the Commission may rely on information more recent than presentence reports in making parole determinations, *id.* at 7, it must provide summaries of all materials in the report to the defendant, unlike courts that must summarize only factual materials relied upon in sentencing, *id.* at 8, and, also unlike the courts, the Parole Commission is not free to leave a copy of the presentence report in the defendant's possession. *Id.* Finally, *Crooker* expresses a concern that if presentence reports are deemed agency records, defendants' privacy may be invaded when FOIA requests for presentence reports from persons other than the defendant must be respected. *Id.* at 8–10. On balance, the First Circuit concludes that presentence reports should not be deemed agency records. *Id.* at 10–11.

### III. Transforming Court Documents Into Agency Records in the Ninth Circuit.

#### A. *Warth v. Department of Justice*

The Ninth Circuit case that discusses the agency records question in greatest detail, *Warth v. Department of Justice,* 595 F.2d 521 (9th Cir.1979) (hereinafter *"Warth"*), held that a 6000-page trial transcript in the possession of a United States Attorney was a court document not discoverable under the FOIA. Noting the need for "courts to control the dissemination of [their] documents to the public," the court held that "a court document is not an 'agency record' for purposes of the FOIA even when held by the DOJ." *Id.* at 523 (footnote omitted).

---

**5.** The government attorney working on this case has demonstrated extraordinary diligence and strength of character. The decisions in both *Lykins* and *Crooker v. United States Parole Commission,* 730 F.2d 1 (1st Cir.1984), were prompt-

ly brought to this court's attention by government counsel, despite the fact that *Lykins* is directly contrary to the government's position in this case. We commend attorney Susan Ehrlich for her work before this court.

*Warth* bars us from adopting in full the *Goland* "control" standard applied in *Carson.* Despite protestations to the contrary, *see Warth,* 595 F.2d at 523 n. 7 ("the *Goland* holding in no way conflicts with our holding today"), *Warth* alters the *Goland* test. *Goland* focuses partly on the very secrecy surrounding a document to keep that document hidden from public view. *Goland,* 607 F.2d at 347. Because the Congressional Committee "swore the stenographer and typist to secrecy" and the CIA was "not free to dispose of the Transcript [at its] will," the transcript remained a Congressional document. *Id.* Under the *Goland* test, initial secrecy argues strongly for continued secrecy throughout a document's life.

Although such analysis would easily resolve the issue before us,[6] we are not free to adopt this control test. The trial transcript at issue in *Warth* was not, in any sense, a confidential document. A federal statute requires that transcripts be available for public viewing. *See* 28 U.S.C. § 753(b) (1976 and Supp.1982). Thus, confidentiality is not dispositive of a document's status as an agency record in this circuit.

By discarding the confidentiality aspect of *Goland*'s analysis, *Warth* is also discarding much of the *Goland* standard. The case before us, therefore, turns on the meaning of *Warth.* The government argues that *Warth* adopts an "origination" test, while Berry claims it adopts a "control" test. We discuss these arguments in turn.

### B. Origination is Not the Test

The government asks this court to adopt an origination test to decide whether documents are agency records under the FOIA. Under this test, documents generated by nonagencies would never be discoverable under the FOIA.

■ Heeding both logic and precedent, we reject this argument categorically. In *Goland,* the D.C. Circuit held that the "origins of a document, standing alone" do not "dictate" that it is a nonagency record. *Goland,* 607 F.2d at 346–47. The Supreme Court has endorsed this view. In *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), the Court listed a number of factors relevant to whether a document was an agency record. It considered whether the documents at issue were "generated by the State Department" and then went on to consider additional factors. *Id.* at 157, 100 S.Ct. at 972. Origination alone was not dispositive. In *Forsham v. Harris,* 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980), the Court made the point explicit: "Records of a nonagency certainly could become records of an agency as well." *Id.* at 181, 100 S.Ct. at 985. Although origination is relevant to deciding whether a document is an agency record, it cannot be dispositive. To hold otherwise would be to drape an impenetrable shroud of secrecy over documents generated by nonagencies. That cannot be, and is not, the law.

### C. Toward a Meaningful Control Test

Berry argues that the control test, created in *Goland* and applied to compel disclosure of presentence reports in *Carson,* should be the law of this circuit. We have shown a willingness to move in this direction, because *Warth* claimed to cite *Goland* with approval. In another sense, however, the control test is not very helpful. When the Supreme Court was asked to decide if Secretary of State Kissinger's personal notes of telephone conversations were agency records, it offered no more than a list of factors relevant to this determination. *Kissinger,* 445 U.S. at 157, 100 S.Ct. at 972. This list itself offers little guidance, since these factors cannot all be accorded equal weight and are, in many

---

6. Here, the court is statutorily required to reveal the presentence report to the defendant. Fed.R. Cr.P. 32(c); Parole Commission and Reorganization Act, 18 U.S.C. § 4208(b) (1976). Just as

initial secrecy led to continued secrecy in *Goland,* initial disclosure would require later disclosure here.

situations, overlapping.[7] To establish greater certainty in this area of the law, we adopt a straightforward test that rationalizes Supreme Court and Ninth Circuit law.[8]

We hold that court-generated documents are agency records if they are 1) in the possession of an agency and 2) prepared substantially to be relied upon in agency decisionmaking.

Both of these requirements are mandated by case law. Possession of the document by an agency was deemed a prerequisite to agency record status in *Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980). Holding that raw data in the possession of a research grant recipient are not agency records, the Supreme Court wrote that "Congress contemplated that an agency must first either create or obtain a record as a prerequisite to its becoming an 'agency record' within the meaning of the FOIA." *Id.* at 182, 100 S.Ct. at 985. This "possessory emphasis" was "buttressed" by both statutory and practical considerations. *Id.* at 185–86, 100 S.Ct. at 987. *See Crooker*, 730 F.2d at 1345 n. 2. Thus, we conclude that documents must be possessed by agencies—either actually or constructively—before they can be agency records.[9]

Possession alone, however, does not transform a document from a court to an agency record. *See Goland*, 607 F.2d at 345 ("[W]e reject plaintiffs' argument that an agency's possession of a document *per se* dictates that document's status as an 'agency record.'") (footnote omitted). In *Warth*, the Department of Justice possessed the trial transcript at issue. There, we reasoned that if court documents were "deemed 'agency records' for purposes of the FOIA when held by the DOJ, the Act would encroach upon the authority of the courts to control the dissemination of [their] documents to the public." *Warth*, 595 F.2d at 523. *Forsham* reinforces this analysis when it refuses to "indicate ... that physical possession ... is by itself always sufficient" to convert nonagency documents into agency records. *Forsham*, 445 U.S. at 185 n. 16, 100 S.Ct. at 987 n. 16, *citing Kissinger*, 445 U.S. at 157, 100 S.Ct. at 972. The question is what, in addition to possession, is necessary to establish agency "control."

One of the goals of the FOIA is to allow the public to determine how agencies reach decisions. *SDC Development Corp. v. Mathews*, 542 F.2d 1116, 1119 (9th Cir.1976) (FOIA aimed at documents dealing with "the structure, operation, and decisionmaking procedure" of agencies.). *See* S.Rep. No. 813, 89th Cong., 1st Sess. 2–3, 8, 12 (1965); H.R.Rep. No. 1497, 89th Cong., 2d Sess. 6 (1966), *reprinted in* [1966] U.S. Code Cong. & Ad.News 2418, 2423; Statement by President Johnson Upon Signing Public Law 89–487 on July 4, 1966, *reprinted in* R. Clark, Attorney General's Memo-

---

**7.** *Kissinger* notes:

> We simply decline to hold that the physical location of the notes of telephone conversations renders them "agency records." The papers were not in the control of the State Department at any time. They were not generated in the State Department. They never entered the State Department's files, and they were not used by the Department for any purpose.

*Kissinger*, 445 U.S. at 157, 100 S.Ct. at 972. We do not read this recitation to be a checklist of factors used to assess whether documents constitute agency records.

**8.** Commentators, too, have wrestled with the problem of defining the phrase "agency records." Their thoughts are helpful, although, constrained by precedent, we are not always free to adopt their conclusions. *See, e.g.*, Note,

*The Definition of "Agency Records" Under the Freedom of Information Act*, 31 Stan.L.Rev. 1093, 1115 (1979) (adopting a definition inconsistent with *Warth*); Note, *"Agency Records" Under the Freedom of Information Act: An Analysis of Forsham v. Califano*, 13 Ga.L.Rev. 1040, 1067–68 (1979) (adopting a definition inconsistent with *Forsham*).

**9.** In addition, the jurisdictional requirement for a district court to hear a FOIA case is "improper withholding of agency records." *See GTE Sylvania, Inc. v. Consumers Union of the United States*, 445 U.S. 375, 384, 100 S.Ct. 1194, 1200, 63 L.Ed.2d 467 (1980). Since the Supreme Court has held that documents must be "possessed" before they can be "withheld," possession will inevitably be required before disclosure is ordered. *Kissinger*, 445 U.S. at 150–55, 100 S.Ct. at 968–71.

randum on the Public Information Section of the Administrative Procedure Act II, at IV (1967). *See also* Note, *The Definition of "Agency Records" Under the Freedom of Information Act,* 31 Stan.L.Rev. 1093, 1110 (1979). Documents that are substantially prepared for use in agency decisionmaking are precisely those that the FOIA intended to disclose. Disclosure of those documents is necessary to keep the electorate informed. H.Rep. No. 1497, *supra,* at 14, *reprinted in* [1966] U.S.Code Cong. & Ad.News at 2429. "This emphasis on the function of the document in the agency's decisionmaking process conforms to the legislative purpose of the FOIA, which was to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *RCA Global Communications, Inc. v. FCC,* 524 F.Supp. 579, 583 (D.Del.1981), *citing Rose v. Department of the Air Force,* 495 F.2d 261, 263 (2d Cir.1974), *aff'd,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). The Supreme Court endorsed this analysis in *Forsham* when it noted that "[r]eliance or use may well be relevant ... to the question of whether a record in the possession of an agency is an 'agency record.'" *Forsham,* 445 U.S. at 177 n. 7, 100 S.Ct. at 983 n. 7, *citing Kissinger,* 445 U.S. at 157, 100 S.Ct. at 970. *See Ciba-Geigy Corp. v. Mathews,* 428 F.Supp. 523, 531 (S.D.N.Y.1977). Documents that are routinely forwarded to agencies for their use are not intended to be hidden within the courts. Accordingly, when a court prepares a document substantially for agency use, that document is transformed into an agency record when it is placed in the agency's possession.[10]

## IV. Presentence Reports and Reports on Sentenced Offenders Constitute Agency Records When in the Possession of Government Agencies

Both presentence reports and Reports on Sentenced Offenders are routinely forwarded to the Bureau of Prisons and the Parole Commission. They are clearly "possessed" by government agencies.

Both of the reports at issue are also intended to be relied upon in the agency decisionmaking process.[11] Rule 32 recog-

---

**10.** The limits of this holding are worth noting. First, we are addressing only the transformation of *court* documents into agency records. *Warth* suggests that court documents may be entitled to special treatment under the FOIA scheme. *Warth,* 595 F.2d at 523. *See also McGehee v. CIA,* 697 F.2d 1095, 1107–08 (D.C.Cir.), *aff'd in part on rehearing,* 711 F.2d 1076 (D.C.Cir.1983); *RCA Global Communications, Inc. v. FCC,* 524 F.Supp. 579, 583 n. 7 (D.Del.1981) (*Goland* may not apply "to records created by private parties, as opposed to a coordinate branch of government."). A number of cases in other circuits suggest that possession alone may be sufficient to transform papers other than court documents into agency records. *See, e.g., Washington Research Project, Inc. v. HEW,* 504 F.2d 238, 241–45 (D.C.Cir.1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975); *Wu v. National Endowment for Humanities,* 460 F.2d 1030, 1032 (5th Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973); *Wolfe v. Weinberger,* 403 F.Supp. 238 (D.D.C.1975). Although these cases may be called into question by *Kissinger*'s multi-factor test, that issue is not raised by this case and we choose not to address it.

Second, we note that while our holding establishes one route to disclosure, others may be developed by subsequent cases. In some instances, the fact that a file was assembled—or that a particular document was included in the file—may be significant independent of the contents of the documents themselves. This independent significance might warrant disclosure in certain cases. *Cf., e.g., SDC Development Corp. v. Mathews,* 542 F.2d 1116, 1121 (9th Cir. 1976) (The file's "value lay not in the substance of its content ... but rather in the effort of accumulation, organization, and abstraction.").

Additionally, considerations other than reliance by an agency in its decision-making processes may suffice to trigger the FOIA. For instance, raw research data *possessed* by an agency *and funded* by a federal grant might constitute an agency record, even if reliance were lacking. *See* Note, *"Agency Records" Under the Freedom of Information Act: An Analysis of Forsham v. Califano,* 13 Ga.L.Rev. 1040, 1061–62 (1979) (discussing funding, access, and reliance as criteria).

**11.** It is this second prong of our proposed test that distinguishes *Warth.* There, the trial transcript was prepared for *court* use. Although it might incidentally be used by an agency, it was not "prepared substantially" for agency use.

Additionally, unlike *Warth,* the vast majority of federal cases to address the issue conclude that judicial transcripts in the possession of agencies constitute agency records. Those courts then look to the FOIA exemptions to determine if the documents must be disclosed.

nizes that presentence reports will be relied upon by correctional authorities when it requires that the reports include information that "may be helpful ... in the correctional treatment of the defendant." Fed.R. Crim.P. 32(c)(2). *See* Note, *A Proposal to Ensure Accuracy in Presentence Investigation Reports*, 91 Yale L.J. 1225, 1229 n. 22 (1982). Commentators have noted that presentence reports are prepared "with the intention of assisting the Federal Bureau of Prisons in classification, institutional programming, and release planning decisions." Schmolesky & Thorson, *The Importance of the Presentence Investigation Report After Sentencing*, 18 Crim.L.Bull. 406, 407 (1982) (footnote omitted). *See* Comment, *Proposed Changes in Presentence Investigation Report Procedures*, 66 J.Crim.L. & Crim. 56, 56 n. 5 (1975). The reports are, in fact, routinely relied upon in prison decisionmaking. *See United States v. Cesaitis*, 506 F.Supp. 518, 520 (E.D.Mich. 1981); *Rosati v. Haran*, 459 F.Supp. 1148, 1152 (E.D.N.Y.1977). Presentence reports are also expressly intended to assist the Parole Commission in its decisionmaking. *See* 18 U.S.C. § 4207 (1976). They are routinely relied upon in the parole decisionmaking process.[12] *See* Project, *Parole Re-*

---

*See Fund for Constitutional Government v. National Archives and Records Svc.*, 656 F.2d 856, 867 (D.C.Cir.1981); *Thomas v. United States*, 597 F.2d 656, 657 (8th Cir. 1979); *Librach v. FBI*, 587 F.2d 372, 373 (8th Cir. 1978) *cert. denied*, 440 U.S. 910, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1979); *Malizia v. Department of Justice*, 519 F.Supp. 338 (S.D.N.Y.1981); *Murphy v. FBI*, 490 F.Supp. 1138, 1140 (D.D.C.1980); *Kanter v. IRS*, 496 F.Supp. 1004, 1006 (N.D.Ill.1980); *Hiss v. Department of Justice*, 441 F.Supp. 69, 70 (S.D.N.Y.1977). *But see Valenti v. United States Department of Justice*, 503 F.Supp. 230, 233 (E.D.La.1980). Perhaps as a result of this, *Warth* does not cite a single case in support of its ultimate holding. 595 F.2d at 521–23.

**12.** The First Circuit, in *Crooker*, unfairly discounts the effect of presentence reports in the parole process. *Crooker* accurately acknowledges that "presentence reports may in some cases be central to the Parole Commission's primary function of making parole determinations," *Crooker*, 730 F.2d at 7, but then relies on "common sense" to downplay the overwhelming importance of the report to almost all parole decisions. *Id.* at 7. *Crooker* speculates, without citing authority, that reports of "behavior during incarceration" often will prove more important to parole decisions than will presentence reports. *Id.* This speculation has no basis in fact.

Parole decisions are based on a Guideline Table prepared by the United States Board of Parole. The Table consists of two indices on which inmates are scored: an "Offense Severity" index and a risk of parole violation or "Salient Factor" index. These two indices form the axes of a matrix. Inmates are scored and rated on each of the indices and parole hearing examiners then look to the intersection of the scores to make a parole decision. *See generally* Project, *Parole Release Decisionmaking and the Sentencing Process*, 84 Yale L.J. 810, 822–34 (1975).

Crucially, and absolutely contrary to the First Circuit's "common sense" view of the matter, neither the Offense Severity score nor the Salient Factor score can change significantly while an inmate is incarcerated. The Offense Severity score simply classifies the offense the defendant committed into one of six groups, ranging from minor thefts to aggravated felonies. The score is unaffected by anything the inmate does while in prison. Similarly, the Salient Factor index cannot be altered substantially by an inmate's behavior while incarcerated. The index assesses nine weighted personal characteristics of inmates and classifies the person accordingly. "All but two of the nine items are part of the inmate's past criminal record and behavior; they are 'static' and generally known to the judge at the time of sentencing." *Id.* at 824. The Yale Law Journal project that studied the issue concluded that Salient Factor scores "usually [do] not change during the entire period of incarceration." *Id.* "In most cases, the Board's opportunity to observe institutional progress and rehabilitation—the only relevant information not available to the judge at sentencing—does not affect the release decision." *Id.* at 828.

The Yale Project is not alone in rejecting the First Circuit's "common sense" analysis. All commentators to address the issue conclude that presentence reports are *the* vital document in parole release decisionmaking. *See, e.g.,* Curtis, *Federal Judicial Power, Parole Guidelines, and Sentence Reform*, in 2 Prisoners' Rights Sourcebook 91, 106 (I. Robbins ed. 1980); Fennell & Hall, *supra*, 93 Harv.L.Rev. at 1617 n. 13; Note, *A Proposal to Ensure Accuracy in Presentence Investigation Reports*, 91 Yale L.J. 1225, 1234 (1982). *See also Moore v. Nelson*, 611 F.2d 434, 438 (2d Cir.1979) (rehabilitation plays only minor part in parole decisions); A. Partridge, A. Chaset & W. Eldridge, *Policies of the Parole Commission and the Bureau of Prisons as They Affect the Judge's Sentencing Options* 8 (rev. ed. 1979) (offender can do little within institution to alter parole date "other than violate the rules").

*lease Decisionmaking and the Sentencing Process,* 84 Yale L.J. 810, 878 (1975). Thus, presentence investigation reports constitute agency records when in the possession of either the Federal Bureau of Prisons or the United States Parole Commission.

Similarly, the Report on Sentenced Offender is prepared substantially to be relied upon in agency decisionmaking. "This form allows the judge to communicate his recommendations on place of incarceration and treatment to the Bureau of Prisons, and his recommendation for parole release to the hearing examiner." Fennell & Hall, *supra,* 93 Harv.L.Rev. at 1681. In fact, the form is completed by the judge at the final stage of the sentencing process and thus must be aimed primarily at post-sentencing (that is, agency) objectives. We find that the Report on Sentenced Offender is an agency record when it is in the possession of either the Federal Bureau of Prisons or the Parole Commission.[13]

### V. Limitations on Disclosure

Presentence reports often contain ·fairly intimate information about defendants. The government argues that public disclosure of that information might improperly intrude on a defendant's privacy[14] or undercut government rehabilitative efforts. We address these issues in turn.

### A. Disclosure to Third Parties

Both the government and the First Circuit in *Crooker,* 730 F.2d at 8, express concern that if presentence reports are found to be agency records, there will be an avalanche of requests by third parties seeking defendants' presentence reports. The argument is that disclosure to these third parties would violate defendants' privacy. This contention is unconvincing.

Experience suggests that third party requests for presentence reports would not be common. In the D.C. Circuit, presentence reports have been agency records since the *Carson* decision in 1980. In the last four years, however, there are no reported cases where third parties have requested access to reports. Moreover, we can locate no cases suggesting that defendants' privacy has been invaded. There is no reason to think that our experience in the Ninth Circuit will be different from that in the District of Columbia.

Conversely, in those circuits where presentence reports are not agency records, third party access is not completely barred. If disclosure of a report is necessary to serve the ends of justice, courts will order disclosure. *See United States v. Anderson,* 724 F.2d 596 (7th Cir.1984); *United States v. Charmer Industries, Inc.,* 711 F.2d 1164 (2d Cir.1983); *United States v. Cyphers,* 553 F.2d 1064, 1069 (7th Cir.), *cert. denied,* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977); *United States v. Figurski,* 545 F.2d 389 (4th Cir.1976); *Hancock Brothers, Inc. v. Jones,* 293 F.Supp. 1229, 1233 (N.D.Cal.1968). Thus, whether or not presentence reports are agency records, occasional disclosure to third parties is both inevitable and desirable. There is no reason to think that our holding today will threaten defendants' privacy.

■ Moreover, third parties will rarely have access to presentence reports under the FOIA scheme. FOIA exemption (6) exempts from disclosure "personnel and medical files and similar files the disclosure

---

**13.** It does not necessarily follow from this holding that the presentence report and Report on Sentenced Offender must be disclosed to Berry. On remand, the government is free to assert any additional FOIA exemptions that may be applicable. *See Carson,* 631 F.2d at 1015 n. 29.

In addition to his FOIA claim, Berry argues that due process entitles him to a copy of his presentence report before his parole hearing. Since our resolution of the FOIA claim gives Berry a statutory opportunity for access, we choose not to address the constitutional issue.

*See, e.g., United States v. Raines,* 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960) (avoiding unnecessary resolution of constitutional claim).

**14.** This possibility is only speculative. In many jurisdictions, the presentence report is routinely made part of the public record and those jurisdictions report no significant intrusion on "the privacy of the individual criminal." McLauchlan, *Privacy and the Presentence Report,* 54 Ind.L.J. 347, 355 (1979).

of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). The phrase "similar files" is to be given an expansive interpretation, *see United States Department of State v. Washington Post Co.*, 456 U.S. 595, 599–603, 102 S.Ct. 1957, 1959–62, 72 L.Ed.2d 358 (1982), and has been held to include the names and addresses of citizens imprisoned in foreign countries for narcotics offenses, *Harbolt v. Department of State*, 616 F.2d 772 (5th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980), job evaluations, *Metropolitan Life Insurance Co. v. Usery*, 426 F.Supp. 150 (D.D.C.1976), and criminal "rap sheets," *Malizia v. Department of Justice*, 519 F.Supp. 338, 347 (S.D.N.Y.1981). We have little difficulty concluding that presentence reports, containing information about an "offender's previous criminal record, early life and develomental history, school and employment record, mental and physical condition, religion, habits, attitudes, associates and other pertinent factors," Roche, *The Position for Confidentiality of the Presentence Investigation Report*, 29 Albany L.Rev. 206, 209 (1965), constitute "similar files" for the

purposes of subsection (6). Thus, they cannot be revealed to third parties seeking disclosure under the FOIA if such disclosure would constitute "a clearly unwarranted invasion of privacy." [15] *See Church of Scientology of California v. United States Department of Army*, 611 F.2d 738, 745–46 (9th Cir.1979).[16] We are not asked here to define the term "unwarranted." We hold only that presentence reports constitute similar files under exemption (6).

B. Disclosure to the Defendant

■ The FOIA scheme also precludes disclosure of certain information to the defendant himself where such revelation would prove harmful. The Parole Commission and Reorganization Act maintains the confidentiality of:

(1) diagnostic opinions which, if made known to the eligible prisoner, could lead to a serious disruption of his institutional program;

(2) any document which reveals sources of information obtained upon a promise of confidentiality; or

**15.** The First Circuit suggests that exemption (6) may not adequately protect defendants' privacy. *Crooker* argues that disclosure of presentence reports to third parties would be harmful. *Crooker*, 730 F.2d at 8–9. It analyzes the FOIA exemptions seriatim and concludes that none can adequately protect presentence reports from disclosure. *Id.* at 9–10. Since presentence reports should not be disclosed and the exemptions are inadequate, *Crooker* concludes that the reports must not be agency records. *Id.* at 10–11. *Crooker* candidly acknowledges that it only answers the threshold inquiry whether documents are agency records *after* it has examined the exemptions. It phrases the "critical question" as: "is the possible effect on the sentencing process such that Congress intended the compelled release of presentence reports under the FOIA?" *Id.* at 8.

We disagree with this framing of the question. *Crooker* decides *first* that documents must be kept secret and *then* looks for a vehicle to achieve this end. When it concludes that the exemptions will not prevent disclosure, *Crooker* holds that documents are not agency records.

We prefer to employ the reverse analytic framework. We decide first whether documents are agency records. We then determine whether an exemption applies. By applying this

framework, we avoid second-guessing Congress' wisdom when it drafted the FOIA exemptions. If presentence reports are agency records, they must be disclosed unless exempt. We presume that the exemptions can protect privacy adequately since, after all, that is one of the reasons for which they were enacted.

Moreover, we believe that exemption (6) is fully up to the task for which it was created. The exemption applies only where the privacy interest in nondisclosure "clearly" outweighs the public interest in disclosure. This is perfectly reasonable. If, for instance, a fair trial would be impossible without examination of a third party's presentence report, all courts will order disclosure. *See, e.g., United States v. Charmer Industries, Inc.*, 711 F.2d 1164, 1174 (2d Cir. 1983). Conversely, in some instances, disclosure of a report would be unwarranted. Exemption (6) reflects Congress' decision where the line between disclosure and nondisclosure should be drawn.

**16.** It almost goes without saying that exemption (6) does not bar access by the defendant himself. Where the record sought "is that of the very individual who seeks its disclosure ... there is no invasion of his privacy, and subsection (6) is inapplicable." *Nix v. United States*, 572 F.2d 998, 1006 (4th Cir.1978).

(3) any other information which, if disclosed, might result in harm, physical or otherwise, to any person.

18 U.S.C. § 4208(b) (1976). FOIA exemption (3) exempts from disclosure documents that are "specifically exempted from disclosure by statute ... provided that such statute ... establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3) (1976). Since the Parole Commission and Reorganization Act qualifies as a withholding statute, certain information will be kept from the defendant under the FOIA scheme.

Exemption (3), originally a broad mechanism for avoiding disclosure, *see Administrator, FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), was amended in 1976 to limit its scope. H.R. Rep. No. 94–880, *reprinted in* [1976] U.S. Code Cong. & Ad.News, 94th Cong., 2d Sess. 2183, 2204–05. Under the amended rule, statutes that give agencies unfettered power to withhold information do not qualify as withholding statutes. Statutes that do not permit agencies "wholly discretionary non-disclosure" may qualify for the exemption. *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610, 615 (9th Cir.1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979). An exemption will exist where there has been a *Congressional* determination that "the public interest in maintaining confidentiality of public records outweighs the competing interest in having their contents revealed." *Id.* at 614. *See EPA v. Mink*, 410 U.S. 73, 80 & n. 6, 93 S.Ct. 827, 832 & n. 6, 35 L.Ed.2d 119 (1973); *Irons and Sears v. Dann*, 606 F.2d 1215, 1220 (D.C.Cir.), *cert. denied*, 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1979).

Here, there can be little doubt that Congress saw a public interest in maintaining the confidentiality of specific portions of presentence reports and Reports on Sentenced Offenders. The reports have long been confidential, *see* C. Wright, *Federal Practice and Procedure* Criminal 2d § 524 (1982), and the reasons for maintaining confidentiality of certain portions of the reports appear in the statute itself. 18 U.S.C. § 4208(b) (1976). The Parole Commission and Reorganization Act is an express nondisclosure statute which affirmatively requires confidentiality to achieve stated goals. We hold that it constitutes a withholding statute under exemption (3). *Cf., e.g., Lee Pharmaceuticals v. Kreps*, 577 F.2d 610, 615–17 (9th Cir.1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979) (35 U.S.C. § 122 (1970) constitutes a withholding statute); *British Airports Authority v. Civil Aeronautics Board*, 531 F.Supp. 408 (D.D.C.1982) (49 U.S.C. § 1504 (1976) constitutes a withholding statute). Accordingly, potentially harmful parts of the presentence report and Report on Sentenced Offender will not be disclosed under the FOIA.[17]

17. As part of its universal indictment of the FOIA exemptions, *see* note 15 *supra, Crooker* intimates that exemption (3) might not adequately protect presentence reports from disclosure. *Crooker* argues that "exemption 3, like all FOIA exemptions, must be narrowly construed, and much sensitive material could fall on the margins ... and thus might not be protected from FOIA-compelled disclosure." *Crooker*, 730 F.2d at 9.

As discussed in note 15 *supra*, this analysis simply evinces the First Circuit's general objection to the wording of the FOIA. Under all circumstances, exemption (3) must be narrowly construed. Under all circumstances, much sensitive material could fall on the margins of a withholding statute. And, under all circumstances, certain material might not be protected from FOIA-compelled disclosure. There is nothing unique about presentence reports in

this regard. The First Circuit's general dissatisfaction with Congress' choice of language when it drafted the FOIA should not be used as an argument against deeming presentence reports to be agency records.

Moreover, 18 U.S.C. § 4208 provides an extraordinarily clear basis for exemption (3) withholding. Since the language of section 4208 is practically identical to the language of Rule 32, the FOIA will probably entitle defendants to copies of that which they were shown at sentencing and no more. The determination of what must be withheld was made by the trial court at the time of sentencing; the Parole Commission could simply heed this determination at a later FOIA proceeding. More than almost any other statute, section 4208 provides a clear determination of what is properly withheld under exemption (3).

## VI. Effect on the Quality of the Report

The government argues that disclosing the presentence report will chill sources of information for the report and decrease the report's accuracy.[18] This contention has been raised for decades, and has now been disproved, both analytically and empirically. In 1944, the Advisory Committee on Criminal Rules to the Judicial Conference of the United States submitted to the Supreme Court a draft provision requiring full disclosure of presentence reports to the parties once guilt was established. This proposal was ultimately dropped in the face of strong judicial opposition.

Thirty years later, this dispute resurfaced and the advocates of disclosure carried the day. In 1975, the Supreme Court approved and Congress adopted the version of Rule 32(c)(3) at issue in this lawsuit. The rule requires disclosure to the defendant, upon request, of the factual sections of the presentence report, subject to certain exceptions. The defendant is generally not permitted to retain a copy of the report.[19] Fennell & Hall, *supra,* 93 Harv.L.Rev. at 1646–47. Thus, routinely, the defendant has two opportunities to view his presentence report—once before sentencing and once before his parole hearing.

Despite the fears of those who opposed Rule 32(c)(3), disclosure has not chilled information sources. Fennell & Hall, *supra,* 93 Harv.L.Rev. at 1686. Moreover, those districts that make copies of reports available to defendants report no information loss. Comment, *supra,* 66 J.Crim.L. & Criminology at 58 & n. 22. Empirical studies examining the effect of disclosure conclude that "disclosure has been achieved without the serious repercussions predicted by opponents of the mandatory disclosure rule." Fennell & Hall, *supra,* 93 Harv.L. Rev. at 1689; *see* McLauchlan, *Privacy and the Presentence Report,* 54 Ind.L.J. 347, 353 (1979). In fact, "a significant minority of the judges ... believe that disclosure has improved the quality of the report." Fennell & Hall, *supra,* 93 Harv.L. Rev. at 1688. Thus, empirics suggest that the government's argument is without merit.

Beyond empirics, common sense suggests that making copies of reports available to defendants will not chill information sources. Under Rule 32, defendants have the right to view substantial portions of their presentence reports. Fed.R.Crim.P. 32(c). If any chilling of sources were to occur, this disclosure would certianly trigger it. It is unlikely that any additional chilling will be caused by permitting defendants to retain copies of that which they have already seen.

Finally, the Supreme Court has recently suggested that any information loss that might result from disclosure of presentence investigation reports is not a significant threat to the quality of reports. *See Gardner v. Florida,* 430 U.S. 349, 359, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977) (plurality opinion). Justice Stevens observed that increased quantities of information available to investigators does not assure improved reports if no attention is paid to the accuracy of that information. *Id.* Currently, factual errors in presentence re-

---

**18.** Appellee cites *United States v. Charmer Industries, Inc.,* 711 F.2d 1164 (2d Cir.1983), for this proposition. *Charmer* set a standard for disclosure to persons other than the defendant who seek access to presentence reports. Since the case makes no mention either of *Carson* or of Fennell & Hall's empirical conclusions, we find it unpersuasive on the issue before us.

**19.** *See also* note 1 *supra.* One might argue that our interpretation of the FOIA distorts the clear intent of the Federal Rules of Criminal Procedure. Rule 32 requires disclosure of presentence reports to defendants but does not require that copies be made available. It would follow that we undercut this intent by providing copies under the FOIA.

This argument is without merit. First, FOIA speaks in terms of disclosure and nondisclosure. It does not recognize degrees of disclosure, such as permitting viewing, but not copying, of documents. Second, the Federal Rules of Criminal Procedure speak to the courts, Fed.R.Crim.P. 1; FOIA speaks to the agencies, 5 U.S.C. § 552(a). Rule 32 limits disclosure by the courts; FOIA may require disclosure by the agencies. To read Rule 32 more broadly than its plain meaning would be to distort the federal statutory scheme.

ports are commonplace. *See, e.g.,* Fennell & Hall, *supra,* 93 Harv.L.Rev. at 1628–30; Coffee, *The Future of Sentencing Reform: Emerging Legal Issues in the Individualization of Justice,* 73 Mich.L.Rev. 1361, 1375–76, 1395–98 (1975). Allegations of inaccurate decisionmaking due to these factual errors are widespread. *See, e.g., United States ex rel. Petri v. Warden, Allenwood Federal Prison Camp,* 507 F.Supp. 5, 7 (M.D.Pa.1980); *Payton v. Thomas,* 486 F.Supp. 64, 68 (S.D.N.Y.1980). If our holding results in meaningful access to presentence reports, it will both encourage investigators to be more conscientious and enable defendants to challenge inaccuracies. This may increase the accuracy of presentence reports, *see United States v. Dockery,* 447 F.2d 1178, 1193 (D.C.Cir.), *cert. denied,* 404 U.S. 950, 92 S.Ct. 299, 30 L.Ed.2d 266 (1971); *cf.* Note, *A Proposal to Ensure Accuracy in Presentence Investigation Reports,* 91 Yale L.J. 1225, 1230 (1982), and improve the correctional decisionmaking process. *See United States v. Cesaitis,* 506 F.Supp. 518, 521 (E.D.Mich. 1981) (accurate information will sharpen parole predictions). In light of these considerations, the government's argument that disclosure may inhibit sources of information and decrease the accuracy of reports is unconvincing.

CONCLUSION

Presentence investigation reports and Reports on Sentenced Offenders, because they are substantially prepared for agency use, are agency records under the FOIA when they are in the possession of either the Federal Bureau of Prisons or the United States Parole Commission. On remand, the Department of Justice is free to assert any alternative FOIA exemptions that may preclude disclosure.

REVERSED AND REMANDED.